

POSTED ON WEBSITE

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 07-11185-B-11 |
| Running Horse, L.L.C., | DC No. WLG-2 |
| Debtor. | |

**MEMORANDUM DECISION REGARDING DEBTOR'S APPLICATION TO EMPLOY SPECIAL COUNSEL**

Riley C. Walter, Esq., of Walter Law Group, appeared on behalf of debtor, Running Horse, L.L.C. (the "Debtor").

Jeffrey J. Lodge, Esq., appeared on behalf of Sara L. Kistler, Acting United States Trustee.

Patricia Bone O'Neill, Esq., of Pascuzzi, O'Neill & Moore, appeared on behalf of proposed special counsel for the Debtor.

    Before the court is the Debtor's Application to Employ Special Counsel (the "Application"). The Debtor seeks to employ the law firm of Pascuzzi, O'Neill & Moore ("Pascuzzi") to serve as its "special counsel" pursuant to 11 U.S.C. § 327(e). The United States Trustee ("UST") objects on the grounds that Pascuzzi already represents parties with adverse interests and is not eligible to represent the Debtor. For the reasons set forth below, the Application will be denied.

    This memorandum decision contains the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court

has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 327[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

The Debtor is a limited liability company. It either owns or asserts some control over approximately 435 acres of partially developed land in southwest Fresno (the "Property"), which it hopes to transform into an 18-hole golf course and residential community. The Debtor's schedules state that the value of the Property stands somewhere between $20 million and $40 million. The Property consists of 38 separate parcels of land. Each parcel is subject to multiple liens and interests recorded in various orders and combinations, including tax liens, co-ownership interests, trust deeds, mechanic's liens, and writs of attachment. The exact amount of these liens is unknown, and probably cannot be determined without one or more adversary proceedings, but the schedules strongly suggest that the secured debts against the Property greatly exceed the value of the Property. The Debtor contends that virtually all of the liens and interests are disputed.

In 2006, the Debtor ran out of money and development of the Property ceased after partial completion of the golf course. None of the homes have been built. Numerous lawsuits have been filed against the Debtor and others in the state court seeking, *inter alia*, to enforce mechanic's liens and other claims against the Property. In March 2007,[2] ownership of the Debtor was acquired by Hole-in-One Management and Development, LLC ("Hole-in-One"), an entity controlled by Richard Evans ("Evans"), a creditor of the

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] Unless otherwise indicated, all dates are 2007.

Debtor. Pascuzzi was the attorney for Evans and Hole-in-One and negotiated the change of ownership on their behalf. After that transaction, Pascuzzi began providing legal services for the Debtor as well.[3] Under Evans' control, the Debtor filed a voluntary chapter 11 petition on April 27 to stop, *inter alia*, nonjudicial foreclosure actions by two of the largest secured creditors. Since the filing, the Debtor has been actively seeking new financing or buyers for the Property who will complete the development project.[4]

On May 1, the Debtor filed an application to employ Riley C. Walter, Esq., and his law firm, Walter Law Group ("WLG") to serve as its general counsel pursuant to § 327(a). There were no objections and WLG's employment was approved. The application to employ WLG defines the scope of legal services which WLG will perform as general counsel for the bankruptcy estate to include:

> *Take all necessary action to protect and preserve the estate*, including, if required by the facts and circumstances, the prosecution of actions and adversary or other proceedings on the estate's behalf; the defense of any actions and adversary or other proceedings against the estate; *negotiations concerning all disputes and litigation in which the estate is involved*, and, where appropriate, the filing and prosecution of objections to claims filed against the estate;
> . . .
>
> *Develop, negotiate and promulgate a plan* . . . . (Emphasis added.)

The Debtor now seeks through the Application to employ Pascuzzi to serve as its "special counsel" pursuant to § 327(e). Pascuzzi specializes in real estate and business law. Pascuzzi's principal, Harry S. Pascuzzi, Esq., has practiced real estate law for 20 years, has a real estate license, and has worked in the title and escrow industry. Pascuzzi states in support of the Application:

---

[3] The Debtor's schedules list Pascuzzi as a general unsecured creditor "for notice only." Neither the schedules nor the Application disclose the value of the pre-petition services which Pascuzzi performed for the Debtor. Nor do they disclose who has agreed to pay Pascuzzi to represent the Debtor, and how much, if any, Pascuzzi has been paid for those services.

[4] The Debtor recently entered into a nonbinding letter of intent to sell the Property to an entity controlled by Donald Trump. It is not clear from the record whether those negotiations are ongoing.

> *Knowledge of all of these aspects of law and real estate are necessary to understand the Running Horse project,* to organize the appropriate documents, and to present the asset to potential bidders and investors in an succinct and organized manner which can be readily digested and acted upon. (Emphasis added.)

The Application defines the scope of Pascuzzi's employment vaguely as "represent the Debtors [sic] on real estate and business transaction matters." On June 14, the UST wrote a letter to Pascuzzi requesting, *inter alia*, more detail regarding the scope of services it intended to provide for the Debtor. Pascuzzi responded to the UST's inquiry and described, again vaguely, the scope of its potential employment as "limited to providing real estate background and support to [WLG] and the debtor-in-possession Running Horse, LLC . . . ."

The record reflects that Pascuzzi has already been intimately and actively involved at the center of this case. Harry S. Pascuzzi disclosed in his declaration, "I have been providing the necessary information to Mr. Walter to aid him in his representation of [the Debtor]." Mr. Pascuzzi projects that he personally will devote 4-8 hours each day for the next two months working on the Debtor's case. Pascuzzi describes its activities in this case as follows:

> To date, the majority of Mr. Pascuzzi's time has been spent seeking potential bidders and investors for the project, including telephone conversations, e-mails, and personal meetings with legitimately interested parties. He has spent time negotiating with potential bidders and investors, including the [Donald] Trump Organization. As a result of the publicity and tenacity of the negotiations with the Trump Organization, other investors and bidders have come to the negotiating table thereby ultimately increasing the sale price of the project for the benefit of the creditors.

**Analysis and Conclusions of Law.**

Pursuant to § 1107(a), the debtor-in-possession of a chapter 11 bankruptcy estate has virtually the same rights and responsibilities as a trustee, including the authority to employ professionals at the expense of the bankruptcy estate. Section 327(a) authorizes a debtor-in-possession to employ as general counsel an attorney who is a "disinterested

person" and does not hold or represent an interest adverse to the bankruptcy estate.[5] Section 327(e) creates a limited exception to the "disinterested" test under § 327(a). It authorizes a debtor-in-possession to employ as "special counsel" an attorney who may otherwise not be "disinterested" and eligible for employment under § 327(a):

> The trustee, with the court's approval, may employ, for a *specified special purpose, other than to represent the trustee in conducting the case*, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does *not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed*. (Emphasis added.)

The debtor has the burden of proof to show that the proposed employment is proper. *See In re Big Mac Marine*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005). There is no dispute here that Pascuzzi is not eligible for employment under § 327(a). The record clearly establishes that Pascuzzi is not "disinterested" by virtue of its prior and concurrent representation of the Debtor, Hole-in-One, various secured creditors, and parties with interests adverse to the Debtor and the bankruptcy estate.[6]

The language of § 327(e) sets up a three-prong test for the employment of special

---

[5] The term "disinterested person" is defined in § 101(14) in pertinent part as a person who;

> is not a creditor, an equity security holder, or an insider;
> . . .
> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

[6] Harry S. Pascuzzi's declaration filed in support of the Application states that Pascuzzi represented Evans and his company, Hole-in-One in acquiring ownership of the Debtor, and continues to represent Hole-in-One. Pascuzzi also represents six homeowners for whom it has filed complaints in the state court against the Debtor in connection with their purchase of homes in the Debtor's development project and has already obtained a $1.4 million writ of attachment on their behalf. Pascuzzi also represents another of Evans' companies, Elon Golf Construction, Inc., and a creditor, Emmett's Excavation, Inc., for which it has filed mechanic's liens against the Property totaling more than $9 million. Pascuzzi has filed complaints in the state court to perfect and enforce those liens.

counsel. First, the employment may only be authorized for a "specified special purpose" other than "conducting the case." The "special purpose" must be unrelated to the debtor's reorganization and must be "explicitly defined or described in the application seeking approval of the attorney's employment." 3 *Collier on Bankruptcy* (15th Ed. Rev.) ¶ 327.04[9][d] (2006).

The second and third prongs of the "special counsel" test are dependent upon the first. Once the purpose for special counsel's employment is adequately and specifically defined, then the debtor must show that the proposed attorney or law firm "does not represent or hold any interest adverse to the debtor or to the estate" with respect to the specified purpose of the proposed employment. The Debtor must also show that the employment of special counsel for a specified purpose is in the "best interest of the estate."

Here, the UST argues that Pascuzzi has and does still represent numerous parties with interests adverse to the Debtor and that Pascuzzi is therefore ineligible for employment under § 327(e). *See* footnote 6, *supra*. Although the UST's argument appears to be well supported by the record, this court does not need to decide whether Pascuzzi passes or fails the "adverse interest" test. For the reasons summarized below, the court is not persuaded that the Debtor seeks to employ Pascuzzi for a "specified special purpose," which is sufficiently disconnected from the Debtor's general duty of conducting the case. § 327(e); *See In re Neuman*, 138 B.R. 683, 686 (S.D.N.Y. 1992).

The Debtor has already employed WLG, an experienced bankruptcy firm, to serve as its general counsel in virtually all aspects of the Debtor's reorganization, including formulation of a chapter 11 plan. At the very core of this bankruptcy case is the Debtor's ability to sell its assets or obtain financing to complete the golf course/residential development. Intertwined in that process are numerous disputes regarding the liens and interests attached to the 38 parcels of land that comprise the Property. The Debtor must successfully resolve those disputes, by negotiation or otherwise, and put itself in a position, structurally and financially, to reorganize in chapter 11. Pascuzzi acknowledges

in support of the Application that its expertise in real estate and business law is "necessary to understand the Running Horse project" and that WLG needs Pascuzzi's "real estate background and support."

This court can find nothing "specific" or "special" about the intended scope of Pascuzzi's employment. Neither can the court find that Pascuzzi's services giving "support to WLG," as described in the Application and supporting documents, are substantially unrelated to the Debtor's reorganization effort. Any attorney retained to advise and assist the debtor's general counsel is necessarily involved in "conducting the case" and therefore must be "disinterested." *See In re Neuman*, 138 B.R. at 686 (the employment of the debtor's former law firm, a pre-petition creditor, with an expertise in Medicare law, to advise and assist the trustee with regard to the allowability of the U.S. Government's Medicare overpayment claims, was too closely related to "conducting the case").

When an attorney is not a "disinterested person," but purports to act under the exception of § 327(e), approval by the court must be explicit; it cannot take the form of silent acquiescence. 3 *Collier on Bankruptcy* (15th Ed. Rev.), ¶ 327.04[9][d] (2006). When the "adverse interest" specter looms like a dark cloud over a professional's employment under § 327(e), the court must closely scrutinize the proposed "special purpose" for that employment before it can properly consider the "adverse interest" and "best interest of the estate" tests. The court may look at the totality of the circumstances to determine whether the scope of work will, or has been, properly limited to a "special purpose" within the meaning of § 327(e). Those circumstances include the actual services performed by counsel before and after commencement of the case. *Id.* A professional whose services may be vital to the debtor's reorganization effort, but who is not "disinterested" and eligible for employment under § 327(a), cannot circumvent that requirement by trying to characterize the employment as "special counsel" under § 327(e). *In re Tidewater Memorial Hospital, Inc.*, 110 B.R. 221, 228 (Bankr. E.D. Va. 1989).

Here, the scope of Pascuzzi's proposed employment appears to be "far too expansive an assignment to be appropriate for an appointment under § 327(e)." *See Century Indemnity Company v. Congoleum Corporation (In re Congoleum Corp.)*, 426 F.3d 675, 692 (3rd Cir. 2005). The "special purpose" for which Pascuzzi would be employed in this case, assisting WLG in matters requiring an expertise in real estate and business transaction law, more properly falls under the ambit of § 327(a), which allows for the employment of professionals to assist generally in the administration of the estate. *Id.* That subsection, however, prohibits the employment of professionals who are not "disinterested."

Pascuzzi attempts to mitigate the obvious "conflict of interest" issues by arguing that the interests of its multiple clients are aligned with the Debtor's interest in maximizing the value of the Property. Based on its legal expertise and prior involvement in the case, Pascuzzi contends that its employment would be in the "best interest" of the bankruptcy estate. § 327(e). It states in reply to the UST's objection that "[i]t would be extremely detrimental to the negotiations and sale of Running Horse if Mr. [Harry] Pascuzzi is not appointed special counsel and [is] removed at this vital stage of negotiations."[7] The court has no doubt about Pascuzzi's experience and ability to assist this Debtor on the matters described. Neither does the court have any reason to doubt that Pascuzzi has been working diligently to maximize the value of the Property for the potential benefit of the Debtor and all the other clients which Pascuzzi represents. However, the "best interest of the estate" test does not, standing alone, justify the

---

[7]Pascuzzi's reply misstates the UST's objection. The court has not been asked to disqualify or "remove" Pascuzzi from working in connection with the case. The court has only been asked to rule on Pascuzzi's eligibility for employment as a professional under § 327(e). The court takes no position here as to Pascuzzi's ability to continue working with WLG in its capacity as counsel for Evans and Hole-in-One. That, of course, would require that Pascuzzi do what is required to comply with the California Rules of Professional Conduct. The Debtor's general counsel, WLG, has the primary responsibility to assure that the Debtor is protected from conflicts of interest. If there is cause to bar Pascuzzi from any involvement in the case, for conflict of interest reasons or otherwise, that issue will have to be addressed at another time.

employment of "special counsel." All three elements of § 327(e), the "special purpose," "best interests of the estate," and "adverse interest" tests, must be satisfied. Ironically, the same factors which appear to make Pascuzzi's employment so important at this time also tend to establish that its employment will be too closely related to "conducting the case."

      Pascuzzi offers that it will not be involved in the general bankruptcy administration, that all "administrative matters" will be performed solely by WLG. At oral argument, Debtor's counsel assured the court that Pascuzzi will limit its services solely to contract negotiations with prospective purchasers or financiers. The Debtor's effort to draw an artificial distinction between "general bankruptcy administration" and "contract negotiations" that will profoundly affect the reorganization effort and disposition of assets does not pass statutory muster. Pascuzzi may not represent the Debtor in "conducting the case." The term "conducting the case" is not defined in the Bankruptcy Code. However, the term has been recognized to include matters related to formulation of a chapter 11 plan, and/or liquidation of the debtor's assets. *In re Neuman*, 138 B.R. at 685, citing 2 *Collier on Bankruptcy* (15th Ed. & 1991 Supp.) ¶ 327.03[6].

      Finally, in an effort to salvage the Application, Debtor's counsel represented that Pascuzzi would agree to withdraw from representing any other parties affected by this bankruptcy case. However, the offer to withdraw from adverse representation does not resolve the predicate need for a "special purpose." Further, Pascuzzi's withdrawal from adverse representation does not expunge the existing conflict of interest issues. Pascuzzi cannot spontaneously withdraw from representing all of its other clients. Even so, the absence of "disinterestedness" cannot be cured with a waiver of those conflicts. The chapter 11 debtor-in-possession has a fiduciary duty to its creditors that constrains its ability to waive conflicts of interest. *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 235 (Bankr. E.D. Cal. 1988).

///

///

///

**Conclusion.**

Based on the foregoing, the court is not persuaded that the Debtor seeks to employ Pascuzzi for a "specified special purpose," which is sufficiently unrelated to the Debtor's reorganization and conduct of the case. The Debtor appears to be seeking the employment of a real estate and business transaction specialist to assist and serve as general co-counsel with WLG. Pascuzzi is not eligible to serve in that capacity. Accordingly, the Application will be denied.

Dated: July __10__, 2007

W. Richard Lee
United States Bankruptcy Judge